THOMAS K. SKINKER, Appellant, v. JOHN C. HEMAN *et al.*, Respondents.

### St. Louis Court of Appeals, January 7, 1896.

64 441
65 404
64 441
75 376
64 441
78 633
s148m353
64 441
r148s 349

1. **Injunctions:** RELIEF AGAINST LIEN OF INVALID SPECIAL TAX. A court of equity will interpose to prevent a cloud upon the title to real estate, and will, therefore, enjoin the issue of an invalid special tax bill which would create a lien upon the realty if it were valid.

2. **Special Taxes:** JUDICIAL INTERFERENCE FOR OPPRESSIVENESS OF MUNICIPAL ORDINANCE. When the power to tax land for a local improvement is not expressly granted to a municipal corporation, but is to be implied from the authority expressly delegated, an ordinance involving the exercise of it may be declared invalid because unreasonable and oppressive. And such an ordinance, when it is general in its scope, may be adjudged reasonable in its application to one state of facts and unreasonable when applied to another.

3. ———: ———: RECONSTRUCTION OF PAVEMENTS. And *held*, under this rule, that an ordinance of the city of St. Louis, which required the reconstruction of sidewalks whenever they should be out of repair, was invalid when sought to be applied to an existing pavement which had not reasonably served its purpose, and which could readily be put into good condition by repairs whose cost would be but a very small fraction of the expense of its reconstruction.

4. ———: ———: SOLUTION OF MATTERS OF DOUBT. But *held*, further, in the course of discussion, that the question whether a sidewalk had reasonably served its purpose was in the first instance one for the proper municipal authority—in this case the street commissioner of the city of St. Louis—and that all doubts would be resolved by the courts in favor and support of his determination.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED, AND CERTIFIED TO SUPREME COURT.

*Thos. K. Skinker* for appellant.

*W. C. Marshall* for respondents.

BIGGS, J.—This is a proceeding in equity to enjoin the president of the board of public improvements, and the comptroller of the city of St. Louis, from issuing to the defendant Heman a special tax bill for the construction of a granitoid sidewalk in front of plaintiff's property. The petition is as follows:

"The plaintiff states that defendant, Robert E. McMath, is president of the board of public improvements of the city of St. Louis; that defendant, Isaac H. Sturgeon, is comptroller of said city; that said city of St. Louis is by its charter authorized to cause sidewalks to be repaired and reconstructed and to cause the cost of all such work to be charged upon the adjoining property as a special tax, the bills for which are required by said charter to be made out by the president of the board of public improvements and by him registered in his office and certified and delivered to the comptroller of said city, and by him registered and countersigned and delivered to the party in whose favor the same are issued.

"Plaintiff states that by an ordinance of the said city, numbered 16630, approved March 25, 1892, and entitled, 'An ordinance regulating the construction, reconstruction, and repair of sidewalks within a certain district of the city of St. Louis, to be known as the Western District,' it is provided as follows:

"'Section 1. All sidewalks hereafter constructed, reconstructed, or repaired, in that portion of the city of St. Louis located within the following district, to wit: Western District, bounded east by the west line of Twelfth street, west by the west line of King's highway, south by the south line of Market street from Twelfth street to west line of Jefferson avenue, and by the south line of Laclede avenue from the west line to Jef-

ferson avenue to King's highway, north by the north line of Franklin avenue from Twelfth street to Leffingwell avenue, and by the north line of Easton avenue from Leffingwell to King's highway, shall be constructed of artificial stone flagging or such other stone as may be approved by the board of public improvements. Any person constructing or causing to be constructed in the districts above described a sidewalk of material other than that provided for herein, and every property owner or owners, or their agents, who shall fail, neglect, or refuse, to observe the requirements of this section, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than $20 nor more than $50 for each offense.

" 'Section 2. The street commissioner shall, whenever a sidewalk in the above district is out of repair, notify the owner or owners of the property fronting thereon, or their agents, through the mail, to have the same repaired or rebuilt, and if such owner or owners, or their agents, fail to comply with said notice within ten days from the mailing of said notice, then the street commissioner shall cause the work to be done under the annual contract for artificial stone flagging, the principal constituents of which are composed of crushed granite and Portland cement. Provided, however, that the board of public improvements may grant permission for the temporary use of material, other than that herein provided, during the erection or repair of buildings; and provided, further, that the street commissioner during the season when permanent work can not be done shall, when he deems it necessary, notify the owner or owners or their agents to make temporary repairs. And if such notice is not complied with within five days, the street commissioner shall make such temporary repairs with brick under the annual contract. The cost of all work done by the

street commissioner under authority of this section shall be charged as a lien upon the adjoining property fronting or bordering on the sidewalks repaired or rebuilt, and shall be paid by the owner or owners thereof. When said work is completed, the president of the board of public improvements shall compute the cost thereof, and levy and assess the same as a special tax against each lot of ground chargeable therewith, in the names of the owners thereof respectively, and shall make out and certify to the comptroller, on behalf of the contractor, bills of such cost and assessment as required by law. No contractor or property owner or other person shall lay, rebuild, or repair, or cause to be laid, rebuilt, or repaired, any sidewalk in the district described in section 1 of this ordinance, without having first obtained written permission from the street commissioner so to do. Should any contractor, property owner or owners, or their agents, or other person, fail, neglect, or refuse, to comply with the provisions of this section, or violate the same, he shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than $20, nor more than $50, for each offense.'

"Plaintiff states that by section 1343 of the Revised Ordinances of the city of St. Louis it is provided as follows:

" 'The board of public improvements shall in every year enter into contract for one year, beginning on the first of July, for the grading, constructing, reconstructing, and repairing, of sidewalks, and for the repairing of street and alley and gutter paving, and such other similar work as may be ordered by ordinance, or which may become necessary to be done during the year.'

"Plaintiff states that heretofore, to wit, in the year 1893, the board of public improvements of said city let out to defendant Heman the work of constructing

sidewalks of the public streets of said city with artificial stone flagging within the district described in said ordinance, and for the year ending July 1, 1894, and said defendant by a contract in writing with the said city undertook and agreed to do said work within said district at prices in said contract specified.

"Plaintiff states that he is, and at the times hereinafter mentioned was, the owner of a lot of ground in the city of St. Louis, bounded and described as follows: A lot of ground and the improvements thereon, situated on the southeast corner of Chestnut street and Theresa avenue, having a front of thirty-seven feet on the south line of Chestnut street by a depth southwardly between parallel lines, along the east line of Theresa avenue, one hundred and twenty-eight feet, six inches, to a twenty-foot alley, being in city block number 1953, bounded west by Theresa avenue, east by lot now or formerly of Watts, north by Chestnut street and south by said alley.

"Plaintiff states that said Theresa avenue is a public street in said city; that the eastern twelve feet of said street is laid off as a sidewalk; that plaintiff's said lot fronts upon said sidewalk for a distance of one hundred and twenty-eight feet, six inches; that the said lot lies in a portion of said city occupied exclusively for residence purposes; that plaintiff has six large and fine shade trees growing on the west side of said sidewalk and next to the curbstone, and planted there in pursuance of section 575 of the Revised Ordinances of said city, which trees contribute greatly to the comfort, health, and pleasure, of plaintiff's tenants occupying the house on said lot, and add materially to the value of plaintiff's lot.

"Plaintiff states that said sidewalk has heretofore been laid with a substantial pavement of bricks under

and in pursuance of ordinances of said city and permits obtained from said city, and at the expense of said property and the owner thereof.

"Plaintiff states that heretofore, to wit, in the month of April, 1894, the pavement of said sidewalk being in need of repair, the street commissioner of said city notified plaintiff to have said pavement reconstructed with artificial stone flagging; that the repairs needed were trifling; that thereafter plaintiff made an offer to said commissioner to repair said pavement with bricks, but said commissioner refused to permit the same to be done, and required plaintiff to remove said brick pavement and to replace the same with artificial stone flagging, which plaintiff refused to do; that plaintiff could have had said pavement repaired with brick at a total cost of $7, and said pavement would then have been smooth, safe, and lasting; that defendant Heman, being thereunto directed by said street commissioner, and assuming and pretending to act under and by authority of said ordinance number 16630, and said contract, has removed the above described brick pavement adjoining plaintiff's said lot and has laid down in place thereof a pavement of artificial stone flagging; that the cost of said artificial stone flagging under said contract is $300; that defendant Heman intends to demand of the president of the board of public improvements of said city that he shall compute the said cost, and levy and assess the same as a special tax against plaintiff's said property, and said president of the board of public improvements, unless restrained and enjoined by this court, will so compute, levy, and assess, said tax, and will make out and certify to the comptroller of said city a bill of said cost in behalf of defendant Heman, to be charged as a lien upon plaintiff's said lot.

"Plaintiff states that, before defendant Heman began work upon said pavement, plaintiff in writing warned him not to tear up or remove plaintiff's said brick pavement, and not to lay in place thereof any pavement of artificial stone flagging, and notified said defendant that, if he did any such work, plaintiff would dispute his right to acquire a lien therefor upon plaintiff's said property, or to have a special tax bill issued to him therefor, and that plaintiff would refuse to pay for such work; that defendant Heman did said work in spite of and in defiance of plaintiff's said warning and notice, and, in doing the same, cut the roots of plaintiff's said trees and greatly damaged the same, and that the pavement so laid by defendant will kill said trees and depreciate the value of said property.

"Plaintiff states that the territory described in the above quoted ordinance number 16630 embraces not less than two hundred miles of sidewalk laid with brick; that said ordinance requires all of said sidewalks, as fast as they need repair, to be torn up, destroyed, and reconstructed at the expense of the adjoining property with artificial stone flagging; that the said stone flagging is not more durable and is much more costly than brick, and is destructive of trees growing near thereto.

"Plaintiff states that said ordinance 16630 is unreasonable and oppressive in subjecting plaintiff to an expense forty times as great as is necessary, and in destroying his shade trees without any necessity therefor, and is illegal and void; that any special tax bill that may be issued for such work will nevertheless constitute a cloud upon plaintiff's title to his said real estate.

"Wherefore plaintiff prays the court to order, adjudge, and decree, that defendant Heman is not entitled to have any special tax bill issued to him for the cost of the work done by him as aforesaid, or to have

any lien upon plaintiff's said real estate therefor, and to enjoin the defendant, McMath, as president of the board of public improvements, from making, registering, or certifying, any such special tax bill, or delivering the same to the comptroller of said city, and enjoining the said Sturgeon as such comptroller from registering and countersigning any such special tax bill, or delivering the same to defendant Heman, and for such other and further relief as to the court may seem equitable and proper."

The defendants demurred to the petition, on the ground that it failed to state facts sufficient to constitute a cause of action. The circuit court sustained the demurrer, and, plaintiff refusing to plead further, final judgment was entered for defendants in the circuit court, and plaintiff appealed to this court.

The objection is urged that injunction is not the proper remedy, for the reason that the facts relied on could be effectively interposed in defense of a suit on the tax bill, were one issued. Under the charter of the city (sec. 25, art. 6, scheme and charter) special tax bills issued for local improvements are made liens on the real estate charged therewith. The right to injunctive relief in the present action may be upheld on the well established principle, that a court of equity will interpose to prevent a cloud from being cast upon the title to real estate, as well as to remove one already cast. *Gardner v. Terry*, 99 Mo. 523; *McPike v. Pen*, 51 Mo. 63; *Martin v. Jones*, 72 Mo. 23; *Volger v. Montgomery*, 54 Mo. 577. The rule has often been applied in cases of special tax bills. *Leslie v. City*, 47 Mo. 474; *Fowler v. City*, 37 Mo. 228; *Lockwood v. City*, 24 Mo. 20; *Johnson v. Duer*, 115 Mo. 366; *State ex rel. v. Philips*, 97 Mo. 331; *Ritterskamp v. Stifel*, 59 Mo. App. 510. In the *Philips'* case the plaintiff sought to cancel

tax bills which were alleged to be void. The jurisdiction was sustained, on the ground that the tax bills were apparent liens which entitled the plaintiff to resort to a court of equity to have them canceled. So, in the *Ritterskamp* case, we affirmed the decree of the circuit court canceling a tax bill which had been illegally issued. Under the foregoing authorities the plaintiff's right to sue must be upheld.

It was conceded by plaintiff at the argument that the municipal assembly had express power to pass ordinances for the construction of sidewalks at the cost of the adjacent property.(sec. 26, par. 2, art. 3, and sec. 18, art. 6, of the charter), and it was also conceded, as it was ruled in *Farrar v. City*, 80 Mo. 392, that this by implication carried with it the power of reconstruction when necessary. The general plan for the construction or reconstruction of sidewalks, as indicated in the ordinance in question, is not assailed, the *gravamen* of the complaint being that, when the ordinance is applied to such a state of facts as is set forth in the petition, it becomes oppressive and unreasonable. It may be remarked here that, where judicial interference is allowable, an ordinance which is general in its scope may be adjudged reasonable when applied to one state of facts, and unreasonable when applied to another. *Pennsylvania Railway, v. Jersey City*, 47 N. J. L. 286; *State v. Lowery*, 49 N. J. L. 391. The ordinance as applicable to existing sidewalks requires them to be *reconstructed whenever out of repair;* that is, if a brick should be misplaced or a plank be loose, the entire sidewalk, regardless of its general condition, must be torn up and a new one put down at the cost of the adjacent property. If this is the meaning of the ordinance, which was conceded at the hearing, it requires no argument to show that it is both unreasonable and oppressive,

when applied to existing sidewalks which have not reasonably served their purpose and are in need only of ordinary repairs. The principle of assessments for benefits necessarily rests on the supposed enhancement of the adjacent property by reason of the improvement. That this power can be exercised as often as the municipal authorities may see proper to change the plans of improvement, that is, order a brick walk to-day and a granitoid walk to-morrow, all at the expense of the property owner, is unreasonable and violative of the principle upon which local assessments are upheld, and would be in effect exaction and not taxation. *Wistar v. Philadelphia*, 80 Pa. St. 505; *Smith v. Kingston*, 120 Pa. St. 357.

The question is, under what circumstances and to what extent will courts interfere with the legislative power of municipal authorities. It is a question of importance, and, however decided, practical difficulties will follow. The general rule is that, in the exercise of powers *directly granted*, municipal authorities are beyond the control of the courts. In such matters they are the sole judges of the exigencies or necessities for such legislation. Thus, the power to order that new streets should be opened, and new sidewalks should be constructed, can not be questioned, for it is the exercise of a legislative power expressly granted. However, this rule has not been universally observed in this state. *Corrigan v. Gage*, 68 Mo. 541; *Halpin v. Campbell*, 71 Mo. 493; *City v. Weber*, 44 Mo. 547; *Kelly v. Meeks*, 87 Mo. 396. But the power of the municipal assembly to order the *reconstruction* of sidewalks is under the charter an *implied* one. The language of paragraph 2, of section 26, article 3, of the charter is that the mayor and assembly shall have power by ordinance "to establish, open, vacate, alter, widen, extend, pave, or *otherwise improve* and sprinkle all streets, ave-

nues, sidewalks, alleys, wharves, and public grounds and squares, and provide for the payment of the costs and expenses thereof in the manner in this charter prescribed," etc. In section 15, article 6, of the charter, the authority of the city to *reconstruct sidewalks* is incidentally or indirectly recognized by providing for the annual letting of contracts "for the grading, constructing, *reconstructing*, and repairing, of sidewalks," etc. Section 18, article 6, in apportioning the cost of street improvements between the city and property owners provides that "the paving, curbing, guttering, sidewalks, and the materials for the roadways, the repairs of all alleys and sidewalks, shall be charged upon the adjoining property as a special tax," etc. These are the only provisions of the charter which bear on the question, and they show that the power to reconstruct a sidewalk at the expense of the property owner is implied, and not expressed. This court decided in the case of *White v. Railroad*, 44 Mo. App. 540, that ordinances which are unreasonable and oppressive may be declared invalid by the courts "when the power is not one expressly granted, but at best necessarily implied, because in that case the power can not exceed the necessity which calls for the implication of it." This doctrine has received the sanction of many courts. *Meyers v. Railroad*, 57 Iowa, 555; *Toledo, Wabash & Western Railway Company v. Jacksonville*, 67 Ill. 37; *Tugman v. Chicago*, 78 Ill. 405; *Hayes v. City*, 24 Wis. 542; *Commissioners v. Gas Company*, 12 Pa. St. 318; 1 Dillon on Municipal Corporations, section 319.

Applying this principle, we think the averments of the plaintiff's bill entitled him to a hearing on the merits. The sum and substance of the complaint is that he had previously constructed a brick sidewalk along the west side of his lot; that its general condition was

good, and that it did not need reconstruction; that the repairs needed were slight, which could have been accomplished at the trifling cost of $7, and which the plaintiff offered to have done, and that, in spite of these facts, the street commissioner ordered the sidewalk to be reconstructed at a cost of $300. The further allegations are made that, prior to the commencement of the work, the plaintiff notified Heman that he considered the order of the commissioner illegal and unwarranted, and that he would contest the right to charge the cost of the improvement against his property.

Whether, in a case like we have here, a sidewalk has reasonably served its purpose and therefore should be reconstructed is *prima facie* for the street commissioner to judge, and in support of his decision every doubt must be resolved in its favor. *City v. Weber, supra.* In this way the city and contractors will be reasonably protected against unnecessary litigation, and the citizen will not be without remedy for a manifest wrong. We conclude, therefore, that the demurrer was improperly sustained, and, therefore, reverse the judgment and remand the case. Our conclusion has been reached with hesitation, and as we all recognize that the case is an exceedingly close one, and one of the judges of the court is of opinion that the decision is in conflict with the decision of *Farrar v. St. Louis, supra,* we will certify the cause to the supreme court for final disposition. So ordered. All the judges concur.